IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS SANCHEZ | : | CIVIL ACTION |
| v. | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of Social Security Administration | : | NO. 14-4026 |

**REPORT AND RECOMMENDATION**

THOMAS J. RUETER                                                     October 14, 2015
United States Magistrate Judge

    Plaintiff, Carlos Sanchez, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Social Security Administration ("Commissioner") denying his claims for disability insurance benefits ("DIB"), widower's insurance benefits ("WIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act").

    Plaintiff filed a Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), defendant filed a Response to Request for Review by Plaintiff ("Def.'s Br."), and plaintiff filed a reply ("Pl.'s Reply"). For the reasons set forth below, this court recommends that plaintiff's Request for Review be GRANTED.

**I.  FACTUAL AND PROCEDURAL HISTORY**

    Plaintiff filed applications for DIB and WIB on January 4, 2011, and for SSI on November 9, 2011, alleging disability as of October 1, 2009. (R. 11, 184-87, 207-08, 211.) The claims were denied initially and a request for a hearing was timely filed. (R. 11, 73-78.) A hearing was held on June 15, 2012, before Administrative Law Judge ("ALJ") Donna Dawson. However, ALJ Dawson continued the hearing to provide plaintiff an opportunity to retain

counsel. (R. 26-33.) On January 10, 2013, ALJ I.K. Harrington held a hearing. (R. 11, 34-70.) Plaintiff, who was represented by counsel, appeared and testified. Vocational Expert ("VE") Cecilia Thomas also appeared and testified. Id. In a partially favorable decision dated January 25, 2013, the ALJ found that plaintiff was disabled under the Act as of January 10, 2013, but not prior to that date. (R. 11-22.) The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. It was previously found that the claimant is the unmarried widower of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widower's benefits set forth in section 202(f) of the Social Security Act.

3. The prescribed period ends on December 31, 2017.

4. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

5. Since the alleged onset date of disability, October 1, 2009, the claimant has had the following severe impairments: diabetes mellitus, hypertension, coronary artery disease, degenerative joint disease, and knee pain (20 CFR 404.1520(c) and 416.920(c)).

6. Since the alleged onset date of disability, October 1, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

7. After careful consideration of the entire record, the undersigned finds that since October 1, 2009, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb, bend, balance, stoop, kneel, crouch, crawl, and climb. He must avoid concentrated exposure to extreme heat and cold, and exposure to fumes, odors, dust, gas, and poor ventilation.

8. Since October 1, 2009, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

9.  Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On January 10, 2013, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

10. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11. Prior to January 10, 2013, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on January 10, 2013, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

12. Prior to January 10, 2013, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

13. Beginning on January 10, 2013, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

14. The claimant was not disabled prior to January 10, 2013, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 14-22.)

Plaintiff filed a request for review of the decision of the ALJ that was denied by the Appeals Council on May 7, 2014. (R. 1-4.) The ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is

substantial evidence in the record to support the Commissioner's decision. Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum, 48 F.3d at 117. This court may not weigh evidence or substitute its conclusions for those of the fact finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993)). As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Specifically, the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 423(d)(5). A claimant satisfies this burden by showing an inability to return to former work.

4

Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).  Once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience, the claimant has the ability to perform specific jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f).

The Commissioner decided this matter by utilizing the five step sequential evaluation process established by the Department of Health and Human Services to determine whether a person is "disabled."  This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience.  20 C.F.R. §§ 404.1520, 416.920.

### III.    BACKGROUND

#### A.    Testimony of Plaintiff, January 10, 2013

At the administrative hearing, plaintiff, accompanied by counsel, appeared and testified.  (R. 36-70.)  Plaintiff lived in an apartment with his fourteen year old granddaughter, whom he had custody of since she was three years old.  (R. 43, 47.)  Plaintiff attended high school through eleventh grade and subsequently earned his Graduate Equivalency Degree ("GED").  He also had some HVAC training.  (R. 51.)

Plaintiff last worked in a full-time position in October 2009.  He was fired from this job.[1]  (R. 44, 54.)  Plaintiff attempted to do maintenance work in 2011.  This involved

---

[1] Plaintiff requested a less strenuous position at this job because his "wife was getting very sick and I can't keep doing this job because my knees hurt and I need somewhere, some light work if I could do that, then I could go home and take care of my wife.  I won't have

5

carrying building materials in an apartment complex. He maintained that he was physically unable to perform this job. (R. 45.) Plaintiff testified that his wife was diagnosed with Lou Gehrig's disease in November 2011. He cared for her with the assistance of an aide until February 15, 2012. (R. 59-60.)

Plaintiff treated with his family physician for hypertension and knee pain.[2] (R. 45.) He also had diabetes which was treated with diet, activity and medications including Lantus and Apidra. (R. 46.) He experienced side-effects from his medication including headaches. (R. 46-47.) Plaintiff was hospitalized on several occasions between July and October 2012 for chest pains, hypertension and severe headaches. (R. 45.) He received treatment for depression in the past, but he did not find it effective. (R. 54-55.) Plaintiff acknowledged that he had not always been compliant with his medication regimen. He attributed this to lack of funding to pay for and transportation to pick up the medication. However, plaintiff maintained that for several years preceding the hearing he had taken his medication as prescribed. (R. 53.)

On a typical day, plaintiff awoke at 4:30 a.m., took his medication and got his granddaughter ready for school. He performed chores, including washing dishes and cleaning; however, he was limited by pain, fatigue and headaches. (R. 48.) Plaintiff attempted to read books but his ability to concentrate was compromised; he also listened to music. Id. Plaintiff

---

the pain in my knees. I won't have the pain in my back so I can take care of her." Apparently this request was not granted and plaintiff was fired from his maintenance job. (R. 54.)

[2]   Plaintiff took acetaminophen for knee pain and aspirin, Metoprolol, Plavix and Imdur for his heart. (R. 47, 50.) He felt that his needs were not properly met by his treatment providers because they did not understand his complaints. Plaintiff explained: "I told them I have very bad pain with my hands. I have all kinds of fungus growing in my fingers because of my sugar and it's like they try to prescribe medicine that I can't take because of the medicine I'm taking right now." (R. 58.)

attended services on Sundays at a nearby church. (R. 48-49.)

Plaintiff related that he was able to lift ten pounds, but added that "the more I lift, it all depends on my knees and my heart because sometimes my heart starts to give up and then my knees start, they start giving me pain in my knees." (R. 49.) He estimated that he could stand for forty-five minutes to one hour before his legs hurt, and walk about two blocks before he experienced pain in his chest and knees. (R. 49-50.) His pain increased in the colder weather. (R. 50.) He was able to sit for forty-five minutes before his "knees lock" and his "kidneys hurt." (R. 52.) He took three forty-five minute naps per day. Id.

    B.    <u>**Testimony of VE, Cecilia Thomas, January 10, 2013**</u>

The VE characterized plaintiff's job in building maintenance as medium and skilled, his job in the battery manufacturing plant as medium and unskilled, his job in the bakery as heavy and unskilled. (R. 63-64.) In response to questioning by the ALJ, the VE opined that an individual plaintiff's age, with the same education and work experience, who was capable of performing light work would be unable to perform any of plaintiff's previous jobs due to their requisite exertional capacity. (R. 63-64.) However, the VE opined that such an individual would be able to perform other jobs that exist in substantial numbers. These included the following simple, entry level, light positions: parking lot attendant, cashier, and cafeteria attendant. (R. 65-66.) The ALJ posed another hypothetical:

> Okay. And the second hypothetical, assume an individual of the claimant's age, education and work experience. Further assume such an individual has the same [limitations] as hypothetical one with occasional climbing, bending, balancing, stooping, kneeling, crouching, crawling, ramps and stairs, ladders, ropes and scaffolding. Needs to avoid concentrated exposure to extreme heat and cold, exposures to fumes, odors, dusts, gases and poor ventilation. Could such a hypothetical individual perform other work and, if so, can you give a few examples of the jobs including the skill level and the numbers of jobs both

nationally and regionally?

(R. 66.) The VE indicted that those environmental restrictions eliminate the job of parking lot attendant. Id. However, the VE identified the job of storage facility rental clerk as a job the hypothetical individual could perform. Id.

> The ALJ gave the VE another hypothetical:
>
> For hypothetical three, assume if you will an individual of the claimant's age, education and prior work experience. Further assume such an individual has the same limitations as in hypothetical number two with additional limitations able [to perform] only simple work-related decisions with few workplace changes. Can such an individual perform other work and if so, can you give a few examples of the jobs including the skill level, the number of jobs both nationally and regionally?

(R. 67.) The VE opined that the hypothetical individual could perform the jobs she identified in response to hypothetical number two, as these were examples of simple, unskilled, entry level jobs. Id. The ALJ posed an additional hypothetical:

> Then with hypothetical number four, further assume an individual of the claimant's age, education and work experience. Further assume that such an individual, due to a combination of severe pain and mental impairments, this individual can [not] sustain sufficient concentration [,] persistence and pace for even simple, routine tasks on a regular, continuing basis for eight hours a day, five days a week for a 40-hour workweek or equivalent work schedule. Can such an individual perform other work and if so, can you give a few examples of the jobs including the skill level, as well as the [number of] jobs both nationally and regionally?

Id. The VE opined that she was unable to identify any jobs such an individual could perform. Id. She added that her testimony was consistent with the Dictionary of Occupational Titles ("DOT").

(R. 67-68.) Plaintiff's counsel posed the following hypothetical to the VE:

> Ma'am, I'd like you to consider an individual of the claimant's age, education and work experience who can lift ten pounds frequently, greater than ten pounds rarely. Who can sit for 45 to 60 minutes at a time, stand 45 to 60 minutes at a time, walk not greater than two blocks and were [sic] limited to simple, routine,

>  repetitive tasks. Would we expect such an individual to be capable of sustaining competitive work activity at the light level of exertion?

(R. 68.) The VE explained that an individual with the aforementioned limitations would be unable to perform the tasks required for light work. Id.

## IV.     DISCUSSION

Plaintiff avers that substantial evidence does not support the finding of the ALJ that plaintiff is not disabled. Specifically, plaintiff argues that the ALJ's assessment of the evidence was flawed due to her failure to consider certain medical records pertaining to plaintiff's class III angina, as well as her reliance upon the opinion of a non-examining state agency physician. As a result of these errors, plaintiff contends that the ALJ's opinion is not supported by substantial evidence. (Pl.'s Br. at 2-8, Pl.'s Reply at 1-7.) Defendant maintains that substantial evidence supports the opinion of the ALJ. (Def.'s Br. at 5-9.)

### A.     ALJ's Consideration of Opinion Evidence

Plaintiff argues that the ALJ erred because she "ignored the evidence from a treating physician dating from June of 2012 showing that Mr. Sanchez had been suffering from 'chronic FC III angina' with a 'crescendo pattern over past 6 months.'" (Pl.'s Br. at 3.) Plaintiff further argues that this angina rating indicated that plaintiff was suffering from marked limitations in terms of his ability to engage in physical activities, and that even less than ordinary activities caused fatigue, palpitations, dyspnea, and anginal pain. Id. at 3-4. Medical evidence in the record documents that plaintiff had coronary artery disease. (R. 289.) A heart catheterization revealed that plaintiff had 80% and 90% occlusions in the area of his left descending artery. Due to the nature of the occlusions, and the configuration of plaintiff's heart, physicians were unsuccessful in their attempts to perform coronary artery angioplasty that plaintiff required. (R.

9

289, 348, 520.)

The record contains treatment notes from Reading Hospital dated June 26, 2012. These notes indicate that plaintiff had "chronic FC III angina" over the past six months. The notes also reference two cardiac catheterizations, and the fact that plaintiff's hypertension was "poorly controlled." (R. 864.) Defendant acknowledges that the ALJ did not specifically analyze this medical evidence, but argues that the ALJ generally cited to the exhibit that contained this evidence, and also indicated that she gave "careful consideration of all the evidence." (Def.'s Br. at 6, R. 12-13, 17.) Defendant further contends that angina referenced in the note is a "symptom of coronary artery disease," and added that the ALJ provided a lengthy discussion of "why Plaintiff's coronary artery disease did not meet or medically equal the Listings at step three." (Def.'s Br. at 6.) Thus, defendant argues that the ALJ's failure to specifically cite to the diagnosis of Class III angina "does not render his [sic] decision unreasonable–i.e., unsupported by substantial evidence." Id.

> Doctors usually classify patients' heart failure according to the severity of their symptoms. The table below describes the most commonly used classification system, the New York Heart Association (NYHA) Functional Classification. It places patients in one of four categories based on how much they are limited during physical activity.
>
> . . .
>
> **Class   Patient Symptoms**
>
> III    Marked limitation of physical activity. Comfortable at rest.  Less than ordinary activity causes fatigue, palpitation, or dyspnea.

http://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Class-of-Heart-

Failure_UCM_306328_Article.jsp.³

An ALJ shall "accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations omitted). If the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. Id. (citing Plummer v, Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). Moreover, an ALJ shall give a treating physician's opinion controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2)-(3), 416.927(c)(2)-(3). A treating source's opinion may be rejected "on the basis of contradictory medical evidence," Plummer, 186 F.3d at 429, or if it is unsupported by sufficient clinical data, Newhouse v. Heckler, 743 F.2d 283, 286 (3d Cir. 1985). An ALJ may not reject a treating physician's opinion based upon his own credibility judgments, speculation or lay opinion. Morales, 225 F.3d at 317. According to the regulations, "a statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Moreover, the Third Circuit has stated, "where there is conflicting probative evidence in the record, [there is] a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and [the court] will vacate or remand a case where such an

---

³ See also http://En.wikipedia.org/wiki/ New_York_Heart_Association_Functional_Classification

explanation is not provided." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). An ALJ may not substitute his own medical opinion for that of a physician who presents competent medical evidence. Plummer, 186 F.3d at 429. If an ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. Furthermore, an ALJ may not make speculative inferences from medical reports. Morales, 225 F.3d at 317-18.

This court is cognizant of the fact that there is "no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 F.App'x 130, 133 (3d Cir. 2004) (not precedential). "A written evaluation of every piece of evidence is not required, so long as the ALJ articulates at some minimum level her analysis of a particular line of evidence." Phillips v. Barnhart, 91 F.App'x 775, 780 n.7 (3d Cir. 2004) (not precedential). Notwithstanding the foregoing, this court notes that in determining whether plaintiff's impairment matches, or is equivalent to, one of the listed impairments, the ALJ must set forth the reasons for his or her decision. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118-19 (3d Cir. 2000); Caruso v. Comm'r of Soc. Sec., 99 F.App'x 376, 379 (3d Cir. 2004) (not precedential). While the ALJ is not required to use magic language or to adhere to a particular analytical format, he or she nevertheless must provide not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Id. "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting this evidence."

Fargnoli, 247 F.3d at 43.  See also Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008) (the ALJ may not reject pertinent or probative evidence without explanation).

This court finds that the ALJ's failure to discuss medical evidence that demonstrated that plaintiff began to experience "chronic FC III angina," with a crescendo pattern at the beginning of 2012 warrants remand.  This notation suggests a deterioration of plaintiff's cardiac condition at least at the beginning of 2012.  (R. 864.)  This evidence was not discussed by the ALJ.  Moreover, this court notes that a diagnosis of class III angina is not consistent with the opinion of Dr. Gieringer, in contrast to the ALJ's statement that this opinion was consistent with all the credible evidence in the record.  (R. 19.)  Defendant sets forth various reasons why this omission on the part of the ALJ did not warrant remand.  However, as the court noted in SEC v. Chenery Corp., 318 U.S. 80, 87 (1943), "the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."  Given the ALJ's failure to mention medical evidence regarding class III angina in his decision, this court cannot determine whether the ALJ considered what limitations this condition imposed, if any, on plaintiff's RFC, as he was required to do.  It is simply unclear whether the ALJ properly accounted for all of plaintiff's credibly established impairments when determining plaintiff's RFC.  Thus, this court recommends that the case be remanded for consideration of all of the medical evidence regarding plaintiff's coronary disease, and the limitations, if any, caused by this condition.

Plaintiff further complains that the ALJ improperly relied on the opinion of state agency physician, Roberta Gieringer, M.D., who  reviewed plaintiff's records and determined that plaintiff could perform light work.  (R. 19, 579-86.)  Plaintiff objects to the ALJ's reliance

on the opinion of state agency consultant Dr. Gieringer in part, because Dr. Gieringer did not have the benefit of all of the medical records before she rendered her opinion. (Pl.'s Br. at 7-8 .) Defendant does not dispute that the Dr. Gieringer, the state agency non-examining physician upon whose opinion the ALJ gave great weight, did not have the benefit of the June 26, 2012 records when she rendered her opinion. Defendant avers, however, this does not warrant remand because the Third Circuit has held that an ALJ may rely on the opinion of a state agency medical consultant even where addition medical records were created in the time between the consultant's opinion and the ALJ's decision. (Def.'s Br. at 7-8 (citing Santee v. Astrue, 2014 WL 2925433, at *3 (E.D. Pa. June 30, 2014)).

As an initial matter, this court notes that the opinions of non-examining state agency physicians "merit significant consideration." Chandler v. Comm'r Soc. Sec. Admin., 667 F.3d 356, 361 (3d Cir. 2011). The weight afforded to non-examining sources like Dr. Gieringer depends upon the degree to which the source provides supporting explanations for their opinion. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). With respect to the time lag between state agency review and the ALJ's issuance of an opinion, the Third Circuit explained that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." Chandler, 667 F.3d at 361.

The ALJ ultimately gave substantial weight to the opinion of Dr. Gieringer, the non-examining state agency consultant (R. 19.) The ALJ related:

> With regard to opinion evidence, in this case great weight is afforded the findings and opinions of the State agency consultant, Roberta Gieringer, M.D., who found the claimant's statements of limitations partially credible. She provided a through [sic] explanation and reference to the claimant's treatment history and coinciding activities of daily living and opined the claimant would be limited to work at light exertion (Exhibit 3F). These findings are **consistent with the credible evidence**

**in its entirety**, including the claimant's testimony of abilities.

Id. (emphasis added). However, as heretofore explained, Dr. Gieringer's opinion was not consistent with the evidence in its entirety. The medical record dated June 26, 2012 indicates that plaintiff was suffering with class III angina, a condition characterized by a marked limitation of physical activity, with fatigue, palpitation or dyspnea caused by less than ordinary activity, at least during the six months preceding plaintiff's admission to the hospital. (R. 864.) This evidence was not discussed by the ALJ. Furthermore, this medical record appears to contradict the ALJ's statement that plaintiff medical record "routinely documented" what the ALJ described as "benign physical findings." (R. 18.) Due to the ALJ's failure to discuss medical evidence in the record that may impact plaintiff's RFC, in conjunction with the fact that Dr. Gieringer did not have the benefit of this evidence when she rendered her opinion,[4] this court recommends that the case be remanded for proper consideration of the medical evidence, with particular attention to plaintiff's cardiac condition beginning in January 2012.[5]

        The court notes that the Commissioner may well reach the same conclusion upon remand; however, in the absence of sufficient indication that the Commissioner considered all of the evidence in the case and applied the correct legal standards, this court cannot satisfy its obligation to determine whether substantial evidence supports the Commissioner's decision. See Terwilliger v. Chater, 945 F. Supp. 836, 844 (E.D. Pa. 1996) (remanding case in the absence of

---

    [4] Plaintiff maintains that Dr. Gieringer did not have the benefit of this evidence, or the benefit of "nearly 300 pages of complicated medical data pertaining to Plaintiff's cardiac pathology that was only offered into the record at the hearing level." (Pl.'s Br. at 7.)

    [5] Plaintiff "acknowledge[s] that the significant deterioration in Mr. Sanchez's cardiac condition only occurred in January of 2012." (Pl.'s Reply at 4.)

sufficient indication that the Commissioner considered all of the evidence).  See also Vega v. Comm'r of Soc. Sec., 2013 WL 6190077, at *5 (D.N.J. Nov. 26, 2013) (remanding case because court could not determine from the ALJ's written opinion whether the ALJ considered chronic fatigue syndrome along with fibromyalgia, or merely disregarded the diagnosis).

## V.     CONCLUSION

After a careful review of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings in her decision and her conclusion that plaintiff is not disabled are not supported by substantial evidence.  Accordingly, the court makes the following:

## R E C O M M E N D A T I O N

AND NOW, this 14th day of October, 2015, upon consideration of plaintiff's Brief and Statement of Issues in Support of Request for Review, defendant's response thereto, and plaintiff's reply, it is respectfully recommended that plaintiff's Request for Review be **GRANTED** and this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.  The parties may file objections to the Report and Recommendation.  See Loc.R. Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS SANCHEZ | : | CIVIL ACTION |
| v. | : | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration | : : | NO. 14-4026 |

## O R D E R

AND NOW, this      day of           , 2015, upon consideration of Plaintiff's Brief and Statement of Issues in Support of Request for Review, Defendant's Response to Request for Review of Plaintiff, and Plaintiff's Reply, and after review of the Report and Recommendation of United States Magistrate Judge Thomas J. Rueter, it is hereby

## O R D E R E D

1. The Report and Recommendation is **APPROVED** and **ADOPTED**.

2. Plaintiff's Request for Review is **GRANTED**, and the decision of the Commissioner of the Social Security Administration is **REVERSED** to the extent that the matter is **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with United States Magistrate Judge Thomas J. Rueter's Report and Recommendation.

3. Judgment is entered in favor of plaintiff, reversing the decision of the Commissioner for the purpose of this remand only.

BY THE COURT:

_____
GERALD A. McHUGH,   J.